**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

)
ALFELTON TURNER,                        )
                                        )
                Plaintiff,              )
                                        )   Civ. Action No. 12-1126 (EGS)
        v.                              )
                                        )
CAROLYN W. COLVIN,                      )
Acting Commissioner of                  )
Social Security,                        )
                                        )
                Defendant.              )
_____)

### MEMORANDUM OPINION

Plaintiff Alfelton Turner seeks reversal of the final

decision by Defendant Carolyn W. Colvin[1] in her official capacity

as Acting Commissioner of Social Security (the "Commissioner")

denying his claim for a period of disability and disability

insurance benefits ("DIB") and for supplemental security income

("SSI") payments.  In the alternative, Plaintiff seeks an order

to vacate and remand his case to the Social Security

Administration for further proceedings.  Pending before the

Court are Plaintiff's Motion for Judgment of Reversal and

Defendant's Motion for Judgment of Affirmance.  Upon

consideration of the parties' briefs, the administrative record,

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social
Security on February 14, 2013. Pursuant to Rule 25(d) of the
Federal Rules of Civil Procedure, Carolyn W. Colvin has been
substituted for former Commissioner Michael J. Astrue as the
Defendant in this action.

and the relevant case law, the Court will **DENY** Plaintiff's
motion to reverse the Commissioner's final decision and **GRANT**
Defendant's motion to affirm the Commissioner's final decision.

## I. BACKGROUND

Plaintiff is a resident of the District of Columbia.
Compl. ¶ 2. On December 2, 2008, Plaintiff filed applications
for disability and disability insurance benefits ("DIB") under
Title II of the Social Security Act ("Act"), and for
supplemental security income ("SSI") payments under Title XVI of
the Act. Administrative Record ("AR") at 13. He alleges
disability beginning October 13, 2005. AR at 161. On his
disability report, Plaintiff alleged that depression and mood
swings limited his ability to work. AR at 173. His
applications were denied both initially, AR at 85-91, and upon
reconsideration, AR at 96-102.

Once an individual has had a hearing, he may bring a civil
action to review the Commissioner's final decision in the
district court for the judicial district in which he resides.
Social Security Act, 42 U.S.C. § 405(g). On October 13, 2010,
an Administrative Law Judge ("ALJ") held a hearing at which
Plaintiff and a Vocational Expert ("VE") testified. AR at 13,
31. The ALJ issued a decision denying benefits on November 23,
2010. AR at 26. The Appeals Council denied review on May 11,
2012, rendering the ALJ's decision the final decision of the

Commissioner.  AR at 1.  Therefore, Plaintiff's claim is ripe

for judicial review before this Court.  *See* 42 U.S.C. § 405(g);

42 U.S.C. § 1383(c); AR at 2-3.

**A. <u>Legal Framework</u>**

1. <u>Defining Disability and Qualifying for Benefits</u>

To qualify for disability insurance benefits and

supplemental security income under Titles II and XVI of the Act,

Plaintiff must first establish that he is "disabled."  *See* 42

U.S.C. §§ 423(a)(1)(E).  Disability is the "inability to engage

in any substantial gainful activity by reason of any medically

determinable or mental impairment . . . which has lasted or can

be expected to last for a continuous period of not less than 12

months."  *Id.* § 423(d)(1)(A); *see id*. § 1382c(a)(3)(A).

Plaintiff is disabled "only if his physical or mental impairment

or impairments are of such severity that he is not only unable

to do his previous work but cannot, considering his age,

education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy."

*Id*. §§ 423(d)(2)(A), 1382c(a)(3)(B).

2. <u>Sequential Evaluation Process</u>

The Administrative Law Judge ("ALJ") must conduct a five-

step sequential evaluation to assess a claimant's alleged

disability.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2012).  The

claimant bears the burden of proof at the first four steps, and

3

the burden shifts to the Commissioner at step five. *Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004).

First, the ALJ must find that claimant is not presently engaged in "substantial gainful" work. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, he must find that claimant has a "severe impairment" that "significantly limits" his ability to do basic work activities. *Id.* §§ 404.1520(c), 416.920(c). Third, if the ALJ finds that claimant suffers from an impairment that meets one of those listed in 20 C.F.R. § 404, Subpart P, Appendix 1, he is deemed disabled and the inquiry ends. *Id.* §§ 404.1520(d), 416.920(d). If claimant's impairment does not meet one of those listed in the Appendix, the ALJ determines his Residual Functional Capacity ("RFC") based upon all the evidence of record. *Id.* §§ 404.1520(e), 416.920(e). Once he has made a determination of the claimant's RFC, the ALJ moves on to step four to determine whether his RFC allows him to do work that he used to do, which is called "past relevant work." *Id.* §§ 404.1520(f), 416.920(f). If the claimant's RFC does not allow him to do past relevant work, the ALJ moves on to step five, where he determines whether the claimant's RFC allows him to adjust to any other work, given his age, education, and work experience. *Id.* §§ 404.1520(g), 416.920(g). If the ALJ finds that claimant can either perform past relevant work (at step

four) or that he can adjust to any other work (at step five), he will find that claimant is not disabled. *Id.*

**B. Factual Background**

In making its final decision to deny Plaintiff disability benefits, the ALJ relied on the evidence contained in hearing testimony and the evidence that Plaintiff submitted during his application for benefits, including medical records and evaluations from various doctors. *See* AR at 13-26.

According to the hearing testimony, Plaintiff was fifty-four years old on October 13, 2005, the date that he alleges onset of disability. *See id.* at 35-36. Plaintiff was covered by disability insurance through December, 31, 2007. *Id.* at 36. For approximately two years prior, he had been working to set up and move office furniture. *Id.* at 35. In October 2005, Plaintiff was sent to prison, *id.* at 36, for a drug-related violation of his probation, *id.* at 45-46, 291. After serving two and a half years in prison, he was released in April 2008. *Id.* at 36, 294-295.

1. Plaintiff's medical records

Plaintiff receives mental health treatment through the Veterans Administration. AR at 34. On June 20, 2008, at his first mental health evaluation subsequent to release from prison, he was diagnosed with moderately severe major depressive disorder, cocaine dependence in remission, alcohol abuse, and

adjustment disorder.  *Id.* at 298-299.  The evaluation noted that
Plaintiff has a history of adjustment disorder and substance
abuse, that he briefly attended a substance abuse rehabilitation
program in 2003 and 2005, and that he received inpatient
psychiatric care in 2004.  *Id.* at 295.  Plaintiff admitted to
having had a beer that day, and stated he did not need an
alcohol recovery program.  *Id.* at 299.  He also reported that he
was on "red alert" when in public, and suspicious of others
because of his military and work experience.  *Id.* at 297.

Plaintiff briefly attended group therapy, but quit because
he did not trust people.  AR at 288.  He began individual
psychotherapy with Raphael Mbachu, M.D. in July 2008.  *Id.* at
287-288.  At his first visit, he cried "profusely" and
complained of lacking motivation, becoming easily frustrated,
being irritable, and having erratic sleep with nightmares
riddled with violence.  *Id.* at 288.  Dr. Mbachu started
Plaintiff on Zoloft for depression, Abilify for his mood, and
Benadryl for insomnia.  *Id.* at 289.

On August 20, 2008, Plaintiff reported "doing well" and
credited the medication for feeling better.  AR at 283.  His
sleep was "restorative," he said that he had reduced his alcohol
intake to two beers a day, and he reported getting along better
with his loved one.  *Id.* at 283.  He looked forward to going to
a job fair the following day.  *Id.* at 284.

At a follow-up visit in September, Dr. Mbachu noted that
Plaintiff was "still stabilizing" on his medications.  AR at
280.  Plaintiff reported "doing fine and sleeping okay."  *Id.* at
279.  He did not find the job fair helpful and was worried about
his finances.  *Id.*  Dr. Mbachu stressed complete abstinence from
alcohol.  *Id.* at 280.  He also suggested an alcohol
rehabilitation program, but Plaintiff declined.  *Id.*

The following month, Plaintiff reported a stable mood, but
complained of feeling frustrated for not being able to find a
job and feeling financial pressure.  AR at 277.  He admitted to
drinking beer three to four times a week.  *Id.*  Dr. Mbachu once
again stressed abstinence and suggested alcohol treatment, but
Plaintiff declined.  *Id.*  By December 22, 2008, Plaintiff
reported poor sleep and feeling "in the dumps" for the past two
to three weeks.  *Id.* at 274.  He denied alcohol use.  *Id.*  Dr.
Mbachu increased his dosage of Zoloft and Benadryl.  *Id.* at 275.

Hoorie Siddique, Ph.D., conducted a psychological
evaluation on behalf of the State agency on January 28, 2009.
AR at 237-240.  Plaintiff told Dr. Siddique that he consistently
had problems getting along with people, particularly with
supervisors.  *Id.* at 238.  He said he refused all mental health
treatment while incarcerated and resumed treatment upon release
in 2008.  *Id.*  Plaintiff also acknowledged a history of alcohol
and crack cocaine abuse and dependence.  *Id.*  Based on a range

of cognitive tests, Dr. Siddique found that much of Plaintiff's cognitive functioning was intact, with only "mild weaknesses." *Id.* at 239. He also determined that Plaintiff's memory did not suffer significant damage from substance abuse. *Id.* He noted that Plaintiff needed ongoing mental health treatment and diagnosed him with alcohol dependence in early partial remission, crack cocaine dependence in sustained full remission, and possible mood and personality disorders. *Id.* at 240.

Gemma Nachbahr, Ph.D., a State agency psychiatric consultant, evaluated Plaintiff on February 9, 2009. Dr. Nachbahr completed a mental residual functional capacity ("RFC") form and opined that Plaintiff had moderate difficulties in maintaining social functioning and in maintaining concentration. AR at 251. Dr. Nachbahr concluded that Plaintiff appeared mentally capable of performing work-related activities with sustained abstinence from drugs and alcohol. *Id.* at 257.

At his next visit with Dr. Mbachu on February 10, 2009, Plaintiff reported "doing okay," but was bothered by not having a job or money. AR at 270. He reported feeling better in response to the increase in medication. *Id.*

On April 24, 2009, Plaintiff asked to participate in "CWT," a job training and matching program for veterans, but was told by his nurse practitioner, Marguerite McGarrah, N.P., that he would first have to complete a substance abuse rehabilitation

program.  AR at 262.  McGarrah reported a "heavy odor" of alcohol on his breath, *id.* at 264, and opined that she did not think he could work unless he was in a substance abuse program with very frequent toxicology screening tests, *id.* at 262.

Patricia Cott., Ph.D., a State agency psychologist, evaluated Plaintiff on June 1, 2009 and found that with full and sustained abstinence from substances, AR at 321, he would only have mild limitations in daily activities, social functioning, and concentration, *id.* at 319.

On June 25, 2009, Plaintiff reported to Dr. Mbachu that he was "holding on" and still had no job.  AR at 340.  He had run out of medication the month before, and was feeling paranoid. *Id.*  Three months later, he reported that things were slow without a job or income, and that he occasionally found temporary jobs helping people move.  *Id.* at 336.  He said that he drank sparingly because he could not afford to drink.  *Id.* Dr. Mbachu encouraged Plaintiff to look for jobs at home improvement stores and food stores as a stocker.  *Id.* at 337. On November 3, 2009, Plaintiff reported "doing well" despite financial difficulties.  *Id.* at 332.  He continued to look for a job, continued to drink alcohol once a week, and took his medication without side effects.  *Id.*  Dr. Mbachu encouraged him to stop using alcohol and to monitor his anger.  *Id.* at 333.

On May 18, 2010, Dr. Mbachu completed an RFC questionnaire that Plaintiff had given him. He gave Plaintiff a "fair" prognosis overall. AR at 353. He commented that Plaintiff demonstrated a persistent depressive state during each of the ten office visits between 2008 and 2010. *Id.* at 353. Dr. Mbachu indicated that Plaintiff had a "fair response to treatment," but that the effectiveness of treatment was hampered by Plaintiff's inability to find a job. *Id.* He also stated that Plaintiff has difficulty focusing for long periods of time, which could be a result of his psychiatric disorders, so he would need intermittent breaks during the work day. *Id.* at 355. He commented that Plaintiff occasionally has difficulty with his memory and that stressful situations may trigger paranoia. *Id.* at 356. On the RFC form, Dr. Mbachu checked a box indicating that Plaintiff would be absent about two days per month due to his impairments and treatment. *Id.* at 357. He also indicated that Plaintiff's ability to maintain concentration for a two hour segment and ability to perform at a consistent pace without an unreasonable number and length of rest periods was "seriously limited, but not precluded." *Id.* at 355. The form defines this phrase as meaning the ability to function in these areas is "seriously limited and less than satisfactory, but not precluded in all circumstances." *Id.*

## 2. Testimony of the Vocational Expert

At the time of his hearing before the ALJ on October 13, 2010, Plaintiff was fifty-nine years old. *See* AR at 35. Plaintiff has an associate degree in criminal administration, *id.* at 34, and his past relevant work includes jobs as a library technician, day laborer, and department store worker. *Id.* at 53, 219.

At the hearing, the ALJ asked the Vocational Expert what kind of work a hypothetical individual with Plaintiff's RFC and limitations could perform. The VE testified that such an individual could perform past relevant work as a department store worker and other "medium, unskilled" jobs, which include work as a general laundry laborer, kitchen helper, and hand packager. AR at 54-55. The VE testified that approximately 2,000 general laundry laborer jobs, 7,500 kitchen helper jobs, and 500 hand packager jobs existed in the metropolitan Washington, D.C. area. *Id.* at 55. The VE also said, however, that an individual would not be a competitive candidate for these jobs if his impairment or treatment caused him to be absent from work for two days per month. *Id.*

## 3. The ALJ's sequential evaluation and findings

The ALJ found at step one of the sequential evaluation that Plaintiff had not engaged in substantial gainful work since October 13, 2005. AR at 15. At step two, the ALJ found that

Plaintiff had severe impairments that caused more than minimal functional limitations on his ability to do basic work activities: mild degenerative joint disease, affective disorder, personality disorder, and substance abuse disorder. *Id.* At step three, the ALJ found that Plaintiff's impairments did not meet any of those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P. *Id.* at 15-16.

At step four, the ALJ found that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. Sections 404.1567(c) and 416.967(c). AR at 17. "Medium work" involves lifting no more than fifty pounds at a time and frequent lifting or carrying of up to twenty-five pounds. 20 C.F.R. §§ 404.1567(c), 416.967(c) (2013). An individual who can do medium work can also do sedentary and light work. *Id.*

The ALJ made three specific findings regarding Plaintiff's RFC. First, the ALJ found that Plaintiff has mental limitations, but can be expected or required to understand, remember, and execute commands with simple instructions. AR at 17. Second, the ALJ found that Plaintiff is seriously limited in the ability to maintain attention for up to two-hour segments, but not precluded from doing so. *Id.* Third, the ALJ found that Plaintiff has serious limitations in the ability to perform at a consistent pace without an unreasonable number or length of rest periods, but is not precluded from doing so. *Id.*

At step four, the ALJ concluded that Plaintiff's RFC allows him to perform past relevant work as a department store worker. AR at 24. At step five, the ALJ concluded that his RFC, age, education, and work experience allows Plaintiff to adjust to jobs that exist in significant numbers locally and nationally. *Id.* at 25. Because he found that Plaintiff could do past relevant work and also adjust to work that exists in significant numbers, the ALJ determined that Plaintiff was not disabled under the Act. *Id.* at 26.

## II. STANDARD OF REVIEW

Judicial review in this Court is statutorily limited to whether the Commissioner, acting through the ALJ, correctly applied the relevant law, and whether there is substantial evidence to support the Commissioner's final decision that Mr. Turner was not disabled. *See* 42 U.S.C. § 405(g); *Butler*, 353 F.3d at 999. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It "requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." *Butler*, 353 F.3d at 999 (quoting *Florida Mun. Power Agency v. F.E.R.C.*, 315 F.3d 362, 366 (D.C. Cir. 2003) (internal quotation omitted). A court's review of administrative decisions for substantial evidence requires "careful scrutiny of the entire record."

*Brown v. Bowen*, 794 F.2d 703, 705 (D.C. Cir. 1986). But a court "may not reweigh the evidence presented to it . . . [or] replace the [Commissioner's] judgment concerning the weight and validity of the evidence with its own. *Davis v. Heckler*, 566 F. Supp. 1193, 1195 (D.D.C. 1983).

## III. DISCUSSION

Plaintiff does not dispute the ALJ's conclusions under the first three steps of its sequential evaluation. Pl.'s Mem. Supp. Mot. J. Reversal at 13, ECF No. 9. He does, however, dispute the ALJ's conclusion at step four that Plaintiff can perform past relevant work, and the ALJ's conclusion at step five that Plaintiff can adjust to other available work. *Id.* at 14.

Plaintiff's challenge to these two conclusions rests upon the argument that the ALJ made three errors in evaluating Dr. Mbachu's opinion evidence. First, Plaintiff argues that the ALJ should have given controlling weight to the entirety of Dr. Mbachu's opinion rather than rejecting the doctor's opinion that Plaintiff would miss two days of work each month due to his impairments and treatment. Pl.'s Mem. at 14. Second, he argues that the ALJ should have given more weight to Dr. Mbachu's opinion that Plaintiff was seriously limited in two areas of basic work function. *Id.* at 15. Third, Plaintiff argues that had the ALJ done these two things (one: given controlling weight

to Dr. Mbachu's opinion about absences per month, and two: given

more weight to Dr. Mbachu's opinion about Plaintiff's serious

limitations), he would have found that Plaintiff could not do

past relevant work or any other work, and was therefore

disabled. *Id.* at 19-20. The Commissioner refutes each of these

claims.[2] The Court will examine each of Plaintiff's arguments

below.

## A. Substantial evidence supports the ALJ's decision not to give controlling weight to Dr. Mbachu's medical opinion regarding two days' absence per month

Plaintiff contends that the ALJ erroneously rejected the

portion of Dr. Mbachu's opinion that stated Plaintiff would miss

two days of work each month due to his impairments and

treatment. *Id.* at 14. Plaintiff claims that the ALJ had to

give this opinion controlling weight because Dr. Mbachu is

Plaintiff's "treating source." Pl.'s Mem. at 15. A "treating

source" is a psychologist or physician who has provided medical

treatment or evaluation to Plaintiff and has an ongoing

relationship with him. *See* 20 C.F.R. §§ 404.1502, 416.902.

Plaintiff further claims that Social Security Ruling ("SSR") 96-

---

[2] In her brief, the Commissioner independently raises an argument related to the reason Plaintiff alleges he was unable to work. Def.'s Mem. Supp. Mot. J. Affirm at 11, ECF No. 10. Because the Commissioner raises it outside of the ALJ's final decision, however, this Court cannot and does not review the merits of that argument here. *See* 42 U.S.C.A. § 405(g); *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004). ("[W]e assess only whether the ALJ's finding[s] . . . [are] based on substantial evidence and a correct application of the law").

2p interprets Sections 404.1502 and 416.902 of the Social Security regulations to prohibit the ALJ from picking which portions of a treating source's medical opinion to accept or reject. Pl.'s Mem. at 15 (*citing generally* SSR 96-2p: Policy Interpretation Ruling Title II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188 (July 2, 1996)).

The Commissioner responds that it (1) it correctly declined to give Dr. Mbachu's entire opinion controlling weight, Def.'s Mem. at 11-12, and that (2) SSR 96-2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions.[3] *Id.* at 13. The Commissioner's argument is persuasive.

1. Relevant Law

"Because a claimant's treating physicians have great familiarity with his condition, their reports must be accorded substantial weight." *Butler*, 353 F.3d at 1003. (citation and internal quotation omitted). "A treating physician's [opinion] is binding on the fact-finder unless contradicted by substantial evidence." *Id.* (citation and internal quotation omitted). The

---

[3] The Commissioner does not expressly concede that Dr. Mbachu is Plaintiff's treating source, but her brief appears to assume that he is. For example, the Commissioner's brief cites two district court cases to support the proposition that the ALJ can reject portions of a treating physician's opinion. Def.'s Mem. at 12. Accordingly, the Court's discussion will also assume that Dr. Mbachu is Plaintiff's treating source.

ALJ must provide "good reasons" for the weight it gives to a treating source's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); SSR 96-2p at *5. The ALJ's reasons must be "sufficiently specific to make clear to [the court]" why the ALJ gave it that weight. SSR 96-2p at *5. If the ALJ "rejects the opinion of a treating physician [he must] explain his reasons for doing so." *Butler*, 353 F.3d at 1003. (citation and internal quotation omitted). Contrary to Plaintiff's argument, Pl.'s Mem. at 15; Pl.'s Resp. to Def.'s Mot. at 5, the ALJ is not required to explicitly address four factors described in SSR 96-2p to analyze Dr. Mbachu's opinion as a treating source.

### 2. Discussion

Dr. Mbachu's opinion that Plaintiff would require two days' absence from work each month is an important component of Plaintiff's disability claim, because according to the Vocational Expert, an individual who is absent that frequently is not competitive for past relevant work. *See* AR at 55. In rejecting this opinion (i.e., in giving it no weight), the ALJ specifically explains that the opinion is contradicted by the "relatively mild symptoms reported" by Plaintiff and the "efficacy of psychotropic medication." *See id.* at 24. Contrary to Plaintiff's assertion, the ALJ did not merely offer a "cursory statement," Pl.'s Mem. at 17, that lacked the requisite specificity, Pl.'s Resp. at 8. In rejecting Dr. Mbachu's two-

day absence opinion, the ALJ (i) analyzed the credibility of Plaintiff's statements regarding the severity of his symptoms, AR at 19-20, (ii) considered evidence contained in Dr. Mbachu's own treatment notes, *id.* at 22-24, and (iii) considered opinion evidence from other physicians, *id.* at 20-22. Upon consideration of the ALJ's analysis, the Court finds that the ALJ gives good reasons with sufficient specificity for why he rejected Dr. Mbachu's two-day absence opinion.

### a. The credibility of Plaintiff's statements regarding the severity of his impairments

The ALJ found that:

There are many troubling issues with respect to the credibility of the claimant's statements regarding the severity of his physical and mental limitations. Of great significance, the undersigned notes that the claimant testified that he refused all treatment while he was incarcerated from October 2005 through April 2008. The undersigned acknowledges that this refusal could be characterized as a symptom of the claimant's mental illness. However, the record is devoid of objective clinical evidence to support the claimant's statements regarding the severity of his physical and mental limitations during this time, creating a very thorny and insurmountable problem for one alleging onset of disability in October 2005. That the claimant could voluntarily decline all treatment without suffering any apparent limitations, repercussions, or consequences brings into question the credibility of his statements regarding the severity of his physical and mental impairments.

AR at 19.

As noted earlier, to be considered disabled under the Act for the alleged period of disability from October 13, 2005 to date, Plaintiff's impairments must be severe enough to render

him unable to do work he had been doing. *See* 42 U.S.C.A. §§
423(d)(1)(A), 1382c(a)(3)(B). Plaintiff cannot only rely on his
personal statements to establish the severity of his
impairments. *Id.* §§ 423(d)(5)(A), 1382c(a)(3)(H)(i). Rather,
he must also furnish objective medical evidence of the symptoms
established by medically acceptable clinical or laboratory
techniques. *Id.* But the ALJ cannot dismiss Plaintiff's
credibility based solely on the lack of objective medical
evidence. *See* SSR 96-7p: Evaluation of Symptoms in Disability
Claims: Assessing the Credibility of An Individual's
Statements*,* 1996 WL 374186, at *1 (July 2, 1996); *Sloan v.
Astrue*, 538 F. Supp. 2d 152, 156-157 (D.D.C. 2008) (finding that
the ALJ erred in dismissing Plaintiff's subjective claims of
pain based solely on the absence of such claims from the medical
reports). The ALJ must provide specific reasons for why he
finds Plaintiff's credibility regarding the severity of his
impairments undermined by the lack of objective medical
evidence. *See* SSR 96-7p at *2; *Brown v. Barnhart*, 408 F. Supp.
2d 28, 37 (D.D.C. 2006).

The ALJ noted that the record was "devoid of objective
clinical evidence" to support Plaintiff's statements regarding
the severity of his limitations between October 2005 and April
2008. AR at 19. But unlike in *Sloan*, he does not discredit
Plaintiff's statements based solely on the lack of such

objective medical evidence.  Rather, he specifically reasons

that Plaintiff's credibility is brought into question because

Plaintiff did not suffer any "apparent limitations,

repercussions, or consequences" throughout the entire period in

which he voluntarily declined treatment.  *Id.*

In *Brown*, the ALJ acknowledged the plaintiff's history of

depression, but noted that the plaintiff told her doctor that

she did not need to see a psychiatrist.  408 F. Supp. 2d at 37.

The ALJ also noted that despite the plaintiff's complaints

regarding the severity of her symptoms, she was still able to

grocery shop and do other household activities associated with

the housekeeping work that the ALJ determined she could do.  *Id.*

The Court in *Brown* decided that the ALJ properly found that the

plaintiff's alleged symptoms were "not very credible" because

the ALJ had made this finding based on an analysis of the

record.  *Id.*

Similarly, the record here also supports the ALJ's finding

that there are "troubling issues," AR at 19, with Plaintiff's

credibility.  Like the plaintiff in *Brown*, Plaintiff here also

voluntarily refused medical treatment for his mental illness for

part of the period in which he alleges disability.  *See id*.  The

ALJ acknowledges that refusal of treatment itself could be a

symptom of mental illness.  *Id.*  But like the plaintiff in

*Brown*, here, Plaintiff's own actions during the period of

alleged disability also undermine his credibility regarding his symptoms to an extent. Dr. Mbachu noted that Plaintiff was able to occasionally find odd jobs or temporary jobs despite the alleged severity of his impairments. *See id.* at 20 (citing AR at 336). In addition, Plaintiff failed to qualify for a work program, not because of his impairments, but because he declined to complete a substance abuse treatment program. *Id.; see also* AR at 277, 280. Plaintiff also continued to drink against Dr. Mbachu's advice to abstain. *Id.* at 20. Although the ALJ acknowledged that Plaintiff's alcohol use could be characterized as a symptom of his substance abuse disorder, he found his statements regarding the severity of his depressive symptoms were further undermined by his refusal to comply with a treatment program. *Id.* at 20. It appears that the ALJ here provided specific reasons to question the credibility of Plaintiff's statements regarding his symptoms. The ALJ's reasons for doing so were grounded in evidence in the record. Therefore, substantial evidence supports the ALJ's finding that Plaintiff's reported symptoms were "relatively mild."

**b. Evidence contained in Dr. Mbachu's own treatment notes**

The ALJ explained that Dr. Mbachu's treatment notes do not support Dr. Mbachu's opinion that Plaintiff would require two days of absence from work each month. Rather, Dr. Mbachu's notes reflect the "efficacy of psychotropic medication." *See* AR

at 24. The ALJ noted that according to Dr. Mbachu's treatment record, Plaintiff's medication regimen "resulted in better sleep and produced improvement in his depressive symptoms." *Id.* at 20. He also noted that Dr. Mbachu's treatment notes indicated only minor nausea as a result of Plaintiff's psychotropic medication, which contradicts Plaintiff testimony regarding alleged side effects. *Id.* Therefore, the doctor's treatment notes do not reflect substantial side effects from medication.

The record also provides substantial evidence to support the ALJ's claim that isolated incidents recorded in Dr. Mbachu's treatment notes in December 2008, June 2009, and June 2010 did not indicate a worsening of symptoms. In December 2008, Plaintiff had only felt "in the dumps" for the two to three weeks prior, Def.'s Mem. at 13-14 (citing AR at 274), following months of effective treatment during which Dr. Mbachu reported that Plaintiff was "doing well," AR at 283, "still stabilizing" on medication, AR at 280, and had a "stable mood," AR at 277. Plaintiff reported feeling paranoid in June 2009 after he had run out of medication, Def.'s Mem. at 14 (citing AR at 340), but no longer reported paranoia after Dr. Mbachu renewed his prescription, *see generally* AR 323-339, 395-440. Also, Plaintiff in December 2010 felt "frustrated and worthless [because] he [was] not able to secure a job," not because treatment was ineffective. *Id.* at 436 (noting that Plaintiff

was "compliant with meds with no side effects").  Accordingly,
Dr. Mbachu's treatment notes reflect the "efficacy of
psychotropic medication," *id.* at 24, and do not support his
opinion that Plaintiff's limitations would cause him to be
absent two days a month.

### c. Opinion evidence from other doctors

The ALJ also explained that Dr. Mbachu's two days of
absence opinion is inconsistent with the opinions of other
doctors who evaluated Plaintiff.  In analyzing the record, the
ALJ accorded substantial weight to the opinion of Dr. Nachbahr,
a State agency psychiatric consultant, who concluded that
Plaintiff appeared mentally capable of performing work-related
activities with sustained abstinence from drugs and alcohol.  AR
at 24.  The ALJ found that Dr. Nachbahr's opinion is consistent
with those of other doctors and medical practitioners who had
evaluated Plaintiff.  *Id.*  First, the assessment of Dr. Cott, a
State agency psychologist, generally supports Dr. Nachbahr's
opinion.  *Id.; see* AR at 319, 321 (finding that Plaintiff would
only have mild limitations in daily activities, social
functioning, and concentration with full and sustained
abstinence from substances).  Dr. Nachbahr's opinion is also
consistent with the evaluation of Dr. Siddique, a psychologist
that the State agency consulted.  *Id.* at 24; *see* AR at 239
(finding that Plaintiff's cognitive functioning only had "mild

weaknesses" and that his memory did not suffer significant damage from substance abuse). And Dr. Nachbahr's opinion is well supported by Nurse Practitioner McGarrah's assessment. *Id.* at 24; *see* AR at 262 (opining that Plaintiff could not work unless he was in a substance abuse program with very frequent toxicology screening tests). Therefore, none of the State agency medical consultants gave opinions that support Dr. Mbachu's two days of absence opinion.

Plaintiff claims that "[t]he only evidence inconsistent with Dr. Mbachu['s] is that which was provided [by] State Medical Consultants." Pl.'s Mem. at 17. But this claim is without merit. Contrary to Plaintiff's claim, the record shows that Dr. Mbachu's own treatment records are consistent with the opinions of Dr. Nachbahr, Dr. Cott, and Nurse Practitioner McGarrah that Plaintiff could work with sustained abstinence from alcohol. Dr. Mbachu's treatment notes indicate that he had advised Plaintiff to abstain from alcohol use in September 2008, AR at 280, October 2008, *id.* at 277, and as late as September 2010, *id.* at 409. He also opined on Plaintiff's RFC form that alcohol contributed to Plaintiff's mental limitations because it "may impair memory and lead to mistakes." *Id.* at 357. Moreover, in September 2009, Dr. Mbachu had encouraged Plaintiff to look for jobs at home improvement stores and food stores as a stocker. *Id.* at 337. Accordingly, it appears that not even Dr.

Mbachu thought that Plaintiff's impairments were so severe that he could not work.  Consistent with the opinions of State agency professionals (Dr. Nachbahr, Dr. Cott, and Nurse Practitioner McGarrah), Dr. Mbachu also thought that Plaintiff's alcohol use contributed to his mental impairments and that abstention was a necessary precursor to competitive employment.

Based on the foregoing analysis, the ALJ rejected Dr. Mbachu's opinion that Plaintiff required two days of absence a month.  The ALJ was "not persuaded that Plaintiff's treatment could not be managed to accommodate his work schedule and minimize treatment absences."  AR at 24.  Because the ALJ provided good reasons with sufficient specificity for rejecting Dr. Mbachu's opinion that Plaintiff requires two days of absence each month, this Court finds that substantial evidence supports the ALJ's decision to do so.

B. **Substantial evidence supports the ALJ's RFC determination that Plaintiff had serious limitations, but was not precluded from work**

Plaintiff's second argument with respect to the ALJ's evaluation of Dr. Mbachu's opinion evidence is that had the ALJ given proper weight to Plaintiff's "serious limitations" in his RFC finding, he would have found him disabled under the Act. Pl.'s Mem. at 18; Pl.'s Resp. at 7.  The ALJ found that Plaintiff was "seriously limited, but not precluded" in two categories of basic work function: (1) his ability to maintain

25

concentration, and (2) his ability to perform at a consistent work pace. *See* AR at 17. These two findings are directly attributed to Dr. Mbachu's opinion on the RFC form that he filled out. *See id.* at 355.

Plaintiff claims that the ALJ failed to analyze his two serious limitations under the Social Security Administration's Program Operations Manual System ("POMS"). Pl.'s Mem. at 18; Pl.'s Resp. at 6-7. POMS is an internal handbook for Social Security Administration ("SSA") employees to refer to when processing Social Security benefits. *See SSA's Program Operations Manual System Home*, https://secure.ssa.gov/apps10/ (last visited August 21, 2013). According to POMS, a "substantial loss of ability" in one of the following four basic work categories "would justify a finding of inability to perform other [unskilled] work even for persons with favorable age, education, and work experience:"

- understand, carry out, and remember simple instructions;
- make judgments that are commensurate with the functions of unskilled work, i.e., simple work-related decisions.
- respond appropriately to supervision, coworkers and work situations; and
- deal with changes in a routine work setting.

*POMS Section: DI 25020.010*, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010 (last visited August 21, 2013). According to POMS, if Plaintiff indeed suffered a "substantial loss of ability," he would

require a "sheltered work setting where special consideration
and attention are provided." *See id.* Plaintiff claims that his
two serious limitations qualify as a "substantial loss of
ability" and therefore require him to work in a "sheltered work
setting." *See* Pl.'s Mem. at 19.

1. Relevant Law

POMS is an agency interpretation that has persuasive force
but neither binds this court or the ALJ. *See Power v. Barnhart*,
292 F.3d 781, 786 (D.C. Cir. 2002) ("[W]e grant an agency's
interpretation only so much deference as its persuasiveness
warrants.") (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140
(1944)). Parties agree that POMS is not binding upon the ALJ.
Def.'s Mem. at 15; Pl.'s Resp. at 6. Therefore, the ALJ has the
discretion to determine whether or not Plaintiff's limitations
render him unable to perform work. The ALJ's determination must
be supported by "substantial evidence." *See Butler*, 353 F.3d at
999 ("[W]e assess only whether the ALJ's finding that [a
claimant] is not [disabled] is based on substantial evidence and
a correct application of the law").

2. Discussion

Upon review of the administrative record, the Court finds
that there is substantial evidence to support the ALJ's RFC
determination at step four that Plaintiff's limitations do not
render him unable to perform other work. The ALJ first claims

that even though Dr. Mbachu found serious limitations in Plaintiff's ability to maintain concentration and work pace, Dr. Mbachu did not state that Plaintiff's symptoms prevent him from working. AR at 24. The ALJ supports this claim by referring to the plain meaning of Plaintiff's level of impairment in these two categories of work function. *See id.* As defined by the RFC form that Dr. Mbachu filled out, "seriously limited, but not precluded means ability to function is seriously limited and less than satisfactory, but not precluded in all circumstances." AR at 355. Plaintiff argues that the ALJ's determination that this level of severity is not enough to justify disability is "arbitrary." Pl.'s Resp. at 6. Neither party cites case law to support their respective positions.

This Circuit has not opined on the significance of the phrase "seriously limited, but not precluded" in a disability evaluation, but three Circuits have. *See Colvin v. Barnhart*, 475 F.3d 727, 731 (6th Cir. 2007) ("seriously limited, but not precluded" means that is able to perform to a limited degree in a vocational category); *see also Cantrell v. Apfel*, 231 F.3d 1104, 1107-1108 (finding that the term "fair" meant "seriously limited, but not precluded," which "does not, on its own, declare that the claimant cannot return to past work . . . [but] requires a review of the entire record in order to judge whether the balance tips toward functional ability or toward

disability"; *but see Cruse v. U.S. Dep't. of Health & Human Serv.'s*, 49 F.3d 614, 618 (10th Cir. 1995) (finding that the phrase "is evidence of *disablty*" for the purpose of meeting a listed disability), *superseded on other grounds by regulation as stated in Carpenter v. Astrue*, 537 F.3d 1262, 1268 (10th Cir. 2008). In *Colvin*, the plaintiff argued that "seriously limited but not precluded" in a particular work function meant that she was unable to perform that work function and therefore precluded from past relevant work. *Colvin*, 475 F.3d at 731. Here, Plaintiff similarly argues that "seriously limited but not precluded" in a particular work function means that he requires a "sheltered work setting" and is therefore precluded from past relevant work and other work that exists. Pl.'s Mem. at 19. But, as the Sixth Circuit held in *Colvin*,

> [Plaintiff's] interpretation cannot stand. The plain meaning of "seriously limited but not precluded" is that one is *not* precluded from performing in that area. It defies logic to assert that a finding of "not precluded" actually means that one *is* precluded. Further, the medical assessment form used to evaluate Colvin's abilities also contained the "none" option, which is defined as "[n]o useful ability to function in this area."

475 F.3d at 731. *Colvin*'s plain meaning analysis of the phrase is particularly instructive here, where the relevant facts are similar to this case, where this Circuit offers no relevant guidance, and where neither party has cited case law to support their respective positions.

Like the form used in *Colvin*, Dr. Mbachu's mental RFC form also had the option of "no useful ability to function." AR at 355. Had Plaintiff been completely precluded, Dr. Mbachu had the option of checking the box labeled "no useful ability to function." *See id.* Moreover, like in *Colvin*, the VE here testified that Plaintiff could perform past relevant work despite being "seriously limited" in a number of work categories. *Id.* at 53-54. Accordingly, the Court finds that "seriously limited, but not precluded" in two areas of work function does not mean Plaintiff was completely precluded from work.

The Commissioner further points out that the other doctors who assessed Plaintiff's mental limitations also determined that Plaintiff could meet the demands of competitive employment. Def.'s Mem. at 16. The ALJ noted that every such doctor opined that Plaintiff had the ability to perform basic work-related activities with sustained abstinence from drugs and alcohol. *See* AR at 24. The Court finds that the record supports this characterization of Plaintiff's abilities. *See id.* at 239 (finding by Dr. Siddique that "Mr. Turner's pattern of performance showed indications of mild relative deterioration or impairment in some of his cognitive abilities . . . but much of his cognitive functioning remains intact at this time"); *see also* AR at 251 (finding by Dr. Nachbahr that all of Plaintiff's

functional limitations are either mild or moderate); *and* AR at
319 (finding by Dr. Cott that all of Plaintiff's functional
limitations are mild).  Moreover, the Commissioner points out
that "nowhere in the record does any doctor suggest, nor does
Plaintiff point to any evidence showing, that Plaintiff needs a
sheltered work environment."  Def.'s Mem. at 16 n.5.  Upon
reviewing the record, the Court agrees with the Commissioner.
Therefore, the Court finds that there was "substantial evidence"
in the record for the ALJ to determine that Plaintiff's serious
limitations in two categories of work function do not preclude
him from all work.

C. **Substantial evidence supports the ALJ's vocational findings
   that Plaintiff could perform past relevant work and other
   work that exists in the economy**

The ALJ relied on the testimony of a VE to determine at
step four that Plaintiff could perform past relevant work as a
department store worker, and at step five that he could do other
"medium, unskilled" jobs that exists in sufficient numbers in
the national economy.  AR at 24-25; *see* AR at 54-55.
Plaintiff's third and final claim is that the ALJ erred at both
steps.  Pl.'s Mem. at 19; Pl.'s Resp. at 9.  He argues that had
the ALJ correctly accepted Dr. Mbachu's opinion regarding
Plaintiff's absence from work and correctly weighed Plaintiff's
serious work limitations, the ALJ would have found Plaintiff
unable to perform either kind of work.  *Id.*  Because the ALJ's

findings are based on the VE's testimony, the question here is whether the VE's testimony constitutes "substantial evidence" to support the ALJ's findings.  The Court finds that it does.

### 1. Relevant Law

The ALJ may consult a VE to determine whether Plaintiff's work skills can be used to do past relevant work or other work that exists in the national economy.  20 C.F.R. §§ 404.1560(b)(2), 404.1566(e).  If the ALJ relies on VE testimony to assess Plaintiff's ability to do work, the ALJ "must accurately describe the claimant's physical impairments in any [hypothetical] question posed to the expert." *Butler*, 353 F.3d at 1005 (quoting *Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C. Cir. 1989)).  Deficiencies in the ALJ's description of the claimant's condition "undermine the foundation for the expert's ultimate conclusion that there are alternative jobs" that the claimant is capable of performing.  *Id.* at 1006 (quoting *Simms*, 877 F.2d at 1053).

A VE's testimony concerning a plaintiff's ability to work may constitute substantial evidence where the testimony is given in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments.  *Colvin*, 475 F.3d at 732; *see Kearse v. Massanari*, 73 F. App'x 601, 604 (4th Cir. 2003) (affirming denial of benefits where ALJ's

hypothetical questions posed to the VE were supported by substantial evidence and ALJ considered all relevant evidence, including claimant's testimony, the objective medical evidence of record, and findings of the state agency physicians and psychologists); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005) (affirming denial of benefits where hypothetical question posed to the VE reflected all of the limitations the ALJ found credible and supported by substantial evidence).

2. Discussion

Here, the hypothetical questions that the ALJ asked the VE reflected the serious limitations in maintaining attention and work pace that the ALJ in step four found Plaintiff to suffer from. *See* AR at 53-54. The ALJ's hypothetical questions also reflected Plaintiff's RFC, age, education, and work experience. *See id.* In response to the ALJ's questions, the VE testified that an individual with Plaintiff's serious limitations could perform his past work as a department store worker. *Id.* at 54. He also testified that such an individual with Plaintiff's RFC, age, education, and work experience could perform other "medium, unskilled" jobs, which include work as a general laundry laborer, kitchen helper, and hand packager. *Id.* at 54-55. The VE further testified that such work exists in significant numbers in the regional and national economy. *Id.* Based on the

VE's testimony, the ALJ found at step four that Plaintiff could perform past relevant work, and at step five that Plaintiff could perform other work. *See id.* at 24-25. The Court finds that the ALJ's hypotheticals accurately reflected its determination of Plaintiff's limitations, RFC, age, education, and work experience. Moreover, as discussed earlier, the ALJ's determination of Plaintiff's limitations and RFC are supported by substantial evidence. In determining Plaintiff's RFC, the ALJ had considered Dr. Mbachu's treatment records, State agency doctor assessments, and Plaintiff's hearing testimony. *Id.* at 24. Therefore, the Court finds that substantial evidence also supports the ALJ's step four and step five conclusions regarding Plaintiff's vocational capabilities. *See Colvin*, 475 F.3d at 732; *see also Kearse*, 73 F. App'x at 604.

The ALJ also asked the VE whether a hypothetical individual whose impairments and treatment would require him to be absent twice a month would be a competitive candidate for the jobs he could perform. The VE testified that such an individual would not be a competitive candidate. AR at 55. The ALJ here also accurately described Dr. Mbachu's opinion regarding Plaintiff's expected absence from work, so there is no question as to the validity of the VE's testimony in reliance on this opinion. *See Butler*, 353 F.3d at 1005. But, as discussed above, substantial evidence supports the ALJ's decision to reject Dr. Mbachu's

opinion regarding Plaintiff's expected absence from work for two days a month.  Therefore, the VE's testimony regarding a hypothetical individual who needs two days' absence each month simply does not apply to Plaintiff.  Accordingly, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff is a competitive candidate for the jobs he can perform, notwithstanding the portion of Dr. Mbachu's opinion that is inconsistent with other substantial evidence in the record.

## IV.  CONCLUSION

Based on the foregoing review of the administrative record and relevant law, the Court finds that the Administrative Law Judge applied the correct legal standards when he denied Plaintiff's claim for disability insurance benefits and supplemental security income and that the ALJ's conclusions are supported by substantial evidence.  Accordingly, Plaintiff's Motion for Judgment of Reversal is **DENIED** and Defendant's Motion for Judgment of Affirmance is **GRANTED**.  An appropriate Order accompanies this Memorandum Opinion.

**Signed:**	**Emmet G. Sullivan**
	**United States District Judge**
	**August 29, 2013**